IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID MARSHALL,                                Case No. 13-cv-111-pp

                        Petitioner,

v.

STATE OF WISCONSIN,

                        Respondent.

**DECISION AND ORDER DENYING PETITION (DKT. NO. 1) AND DISMISSING CASE**

**INTRODUCTION**

On January 30, 2013, David Marshall, representing himself, filed a petition for a writ of *habeas corpus* relief under 28 U.S.C. §2254, asserting that his state conviction and sentence violated the Constitution. Dkt. No. 1. The petitioner is incarcerated at Waupun Correctional Institution, where he is serving a term of eight years' imprisonment for a conviction on two counts of reckless endangerment to safety. Id. at 2. For the reasons that follow, the court denies and dismisses the petition.

**I.    PROCEDURAL HISTORY**

   A.    State court trial and sentencing

On June 24, 2009, a jury found the petitioner guilty of two counts of reckless endangerment to safety. Id. at 2. On October 26, 2009, the state court entered a judgment of conviction, sentencing the petitioner to eight years' imprisonment (four years for each count, running consecutively) and eight

1

years' extended supervision (four years for each count, running consecutively). Dkt. No. 14-1 at 1.

B.    First motion for post-conviction relief

In December of 2009, the petitioner filed a motion for post-conviction relief with the Outagamie County Circuit Court. State v. Marshall, No. 2007CF609, Dkt. No. 86, available at https://wcca.wicourts.gov. When the state court denied that motion, the petitioner filed a direct appeal of his judgment of conviction, and a direct appeal of the order denying post-conviction relief, with the Wisconsin Court of Appeals. Dkt. No. 25 at 3. See also Dkt. No. 14-3.

C.    Direct appeal of both conviction and denial of post-conviction relief

On March 17, 2011, the petitioner filed a brief in support of his "appeal from the decision and order denying postconviction relief." Dkt. No. 14-2. He presented three issues to the court: (1) that trial counsel provided ineffective assistance when she failed "to file a motion to demonstrate that the action taken by the officer was illegal, violated the defendant 4th amendment rights," id. at 2, 28; (2) that the trial counsel provided ineffective assistance when she failed "to use previous testimon[ies] and the audio recording of Deputy Krzoska to impeach or discredit [his] testimony at trial," id. at 2, 32; and (3) that the court erred when it denied his motion arguing that the district attorney "committed unethical behavior when she allowed Deputy Krzoska and Officer Melby to testif[y] untruthfully," id. at 34.

On January 31, 2012, the Wisconsin Court of Appeals "reject[ed]" the petitioner's "arguments and affirm[ed] the order." Dkt. No. 14-6 at 2. The appellate court found that the trial court

> appropriately denied Marshall's postconviction motion without a hearing because the motion fail[ed] to allege sufficient material facts that, if true, would entitle Marshall to relief. Marshall's motion [did] not establish deficient performance or prejudice from his trial counsel's performance, and his claim that the officers committed perjury based on the minor inconsistences in their testimony [was] frivolous. . . . Marshall also failed to establish deficient performance or prejudice from his counsel's failure to impeach the officers' trial testimony with inconsistent statements made at the preliminary hearing and in earlier police reports.

Id. at 3-4 (internal citations omitted). On February 15, 2012, the petitioner sought review of this decision by the Wisconsin Supreme Court. Dkt. No. 14-7. In a one-sentence order dated June 12, 2012, the court denied the petition for review. Dkt. No. 14-8.

D.    Filing of instant federal *habeas* petition

On January 30, 2013, the petitioner filed the current petition for *habeas corpus* relief in the United States District Court for the Eastern District of Wisconsin. Dkt. No. 1. On April 15, 2013, the respondent filed an answer to the petition, alleging that the petitioner had not exhausted his state-court remedies. Dkt. No. 14. On May 6, 2013, the petitioner asked this court to stay the federal proceedings so that he could exhaust his remedies. Dkt. No. 16. On June 3, 2013, the court entered an order staying the case and requiring the petitioner to file regular status reports. Dkt. No. 18.

3

E.    Second motion for post-conviction relief

On June 17, 2013, the petitioner filed a motion for post-conviction relief in the Outagamie County Circuit Court, alleging that his post-conviction counsel was ineffective and explaining why he had not raised this issue earlier. Dkt. No. 25-1. He also sought additional discovery and access to the interview of Officer Krzoska, and he asked the circuit court to reconsider its denial of his pre-sentence motion seeking a reversal of the jury's finding of guilt. Id. On July 29, 2013, the circuit court denied the motion, stating that the petitioner "fail[ed] to state a claim for ineffective assistance of postconviction counsel, as he elected to proceed *pro se* on appeal," and that he "fail[ed] to assert any grounds for relief." Dkt. No. 25-2 at 1.

On October 9, 2013, the petitioner filed an appeal from the denial of the second post-conviction motion with the Wisconsin Court of Appeals. Dkt. No. 25-3. On October 15, 2014, the court of appeals affirmed the circuit court's order denying post-conviction relief. Dkt. No. 25-6. The court noted, "Because Marshall was already provided discovery of [Officer Krzoska's interview] prior to trial, he is not entitled to postconviction discovery of the same evidence." Id. at 3 (citation omitted). Next, the court denied the petitioner's efforts to challenge the circuit court's decision to not reverse the guilty judgment, because Marshall "should have" made that argument "on his first appeal and he provided "no reason . . . for failing to properly raise this challenge on direct appeal." Id. at 4. The court then rejected the ineffective assistance arguments because the court had already addressed that on direct appeal. Id. (citation

4

omitted). Finally, "[t]o the extent Marshall . . . challenge[d] the sufficiency of the evidence to support his convictions," the court of appeals found that he had "failed to provide a reason for his failure to raise that on direct appeal" and found him "procedurally barred from raising these matters now." Id. at 4-5.

On November 7, 2014, Marshall sought review of that decision by the Wisconsin Supreme Court. Dkt. No. 25-7. In another one-sentence order, this one dated February 10, 2015, the Wisconsin Supreme Court denied the petition for review. Dkt. No. 25-8.

H.    Resumption of instant federal *habeas* case

On February 17, 2015, the petitioner filed an update in this court, indicating that he had exhausted his remedies. Dkt. No. 21. On May 6, 2015, the court lifted the stay and entered a scheduling order for briefing. Dkt. No. 22. As of July 21, 2015, the parties had fully briefed the case.

## II.    THE GROUNDS ALLEGED IN THE PETITION

On pages six through nine of the petition, the petitioner raised four grounds for relief, Dkt. No. 1, and he provided detailed support for these grounds in an appendix to the petition, id. at 14-21. In section VII of the petition, entitled "Request for Relief," the petitioner asks the court "[t]o grant petitioner a new trial or dismiss the case under Double Jeopardy Clause."[1] Id. at 12.

---

[1] It appears that by using the phrase "Double Jeopardy Clause," the petitioner means to imply that if this court were to find that his first trial was flawed, it could not order a new trial for him, because the new trial would violate the Double Jeopardy Clause. The petitioner's understanding of what the Double Jeopardy Clause prohibits is incorrect, but because the court does not find

5

The first ground the petitioner raises in the petition alleges that his appellate counsel was ineffective, because counsel failed to argue that his trial counsel was ineffective "for her failure to introduce the tape recorded interview of Matthew Kroska to impeach his testimony at trial." Dkt. No. 1 at 7. According to the petitioner, there existed a tape-recorded interview of Officer Krzoska, recorded "less than 24 hours" after the "alleged incident, where Krzoska shot [the petitioner] in the chest." Id. at 14. The trial court judge heard arguments in chambers about whether or not the defense could use the recording as evidence at trial. Id. The court ruled that the officer should testify in person, and that if his testimony was inconsistent with the content of the recorded interview, the defense could use the recording to impeach the testimony for inconsistent statements. Id. The petitioner provides some of the details of the officer's testimony, and argues that it was inconsistent with the statements Krzoska made in the interview. Id. at 16-17. He argues that his trial counsel was ineffective because she did not impeach Krzoska with the interview, id. at 15, and that his appellate counsel was ineffective because he didn't argue that trial counsel was ineffective for failing to use the recording to impeach Krzoska, id. He argues that because of these two instances of ineffective assistance of counsel, this court should grant him a new trial. Id.

Ground two of the petition states, "The petitioner is requesting this court, to allow the defense to use the tape recorded interview of Matthew Krzoska to be a part of the record." Id. at 7. In support of this request, the petitioner

_____

that the petitioner's first trial was flawed, it need not address the petitioner's misunderstanding further.

argues that his appellate counsel was ineffective because he failed to raise "the contents of the tape recorded interview by Matthew Krzoska on direct appeal." Id. at 16. The petitioner again goes into detail about the inconsistencies he alleges between Krzoska's trial testimony and his statements during the recorded interview. The petitioner argues that this court should grant him a new trial based on his appellate counsel's ineffective assistance, and should order that he may use the tape recording against Krzoska at the new trial. Id. at 16-17.

The third ground the petitioner raises alleges that his trial counsel was ineffective when she "fail[ed] to object to Matthew Krzoska, sitting at the state's table while others witnesses testifying in the case." Id. at 8. He explains that during the trial, Krzoska sat at counsel table next to the prosecutor. He argues that his trial counsel should have realized that allowing Krzoska to sit in the courtroom during the testimony given by all the other witnesses was a "big mistake." Id. at 18. According to the petitioner, Krzoska heard the testimony of three witnesses to "the shooting in the parking lots on July 6, 2007." Id. This was "[detrimental] to the case," because it allowed the officer to "[base] his answers [on] all the witnesses that testif[ied] before him." Id. Much of the petitioner's discussion of this issue, however, circles back to his concern that his trial counsel did not use Krzoska's recorded statement to impeach him. Id. at 18-19.

In his fourth ground, the petitioner argues that the district attorney exhibited "unethical behavior when she allowed" witnesses "to testify

7

untruthfully at the defendant's trial." Dkt. No. 1 at 9. While he states that "both deputy's" provided "inconsistent and contradictory" testimony, id. at 20, the petitioner consistently refers to Krzoska's testimony as the testimony that was false, and inconsistent. He argued that the district attorney did not solicit false evidence, but that she "allow[ed] it to go uncorrected," and that she "ha[d] the responsibility to correct" that testimony. Id. at 20-21.

### III. THE RESPONDENT'S OPPOSITION

In his opposition brief, the respondent acknowledges the petitioner's four claims: (1) ineffective assistance of the petitioner's trial counsel; (2) a request for admission of the recorded interview of Krzoska; (3) ineffective assistance from appellate counsel; and (4) prosecutorial misconduct. Dkt. No. 25 at 3. The respondent asserts, however, that "[the petitioner's] supporting brief . . . has reduced and combined his claims." Id. (citing Dkt. No. 21 at 2-7). According to the respondent, the petitioner "abandoned" his argument that the trial attorney was ineffective because she failed to object to the presence of Krzoska in the courtroom during trial, and "commingled" the other claims into one argument: that the trial attorney was ineffective for failing to introduce the deputy's interview into evidence. Id.

### IV. THE PETITIONER'S FEBRUARY 17, 2015 STATUS REPORT

As noted earlier, the court stayed the federal case to allow the petitioner to exhaust claims in state court, but ordered the petitioner to file periodic status reports in this case. On February 17, 2015, the petitioner filed one such status report. Dkt. No. 21. He used this status report to further argue his case.

He repeated his argument that his trial counsel was ineffective in not using Krzoska's recorded interview to impeach him. Id. at 2. He repeated his argument that he received ineffective assistance of counsel from his appellate lawyer, because that lawyer did not argue that trial counsel was ineffective for failing to use the recorded interview as impeachment. Id. at 5-6. And he repeated his argument that the district attorney allowed the jury to hear false testimony without correcting it. Id. at 3, 6.

## V.  THE COURT'S IDENTIFICATION OF THE CLAIMS THE PETITIONER HAS RAISED

It is true that it is difficult to pinpoint the petitioner's claims. Some of the claims appear duplicative. They all center around the petitioner's belief that the recorded interview would have pointed up inconsistencies in Krzoska's trial testimony, and that his trial counsel was ineffective for failing to use it. The court finds that, regardless of how he has organized his arguments, or how they may blend or blur certain issues, the petitioner has alleged two constitutional violations.

First, he has argued that both his trial counsel and his appellate counsel denied him his Sixth Amendment right to effective assistance of counsel. At the heart of this claim is the petitioner's assertion that his trial attorney did not use the recorded interview to impeach Krzoska, and the appellate attorney didn't raise that issue. Second, he has alleged prosecutorial misconduct. This claim goes to the petitioner's Fourteenth Amendment right to due process.

The court will analyze these two claims.

9

## VI.    STANDARD OF REVIEW

"A petitioner in custody pursuant to a state court judgment may receive a writ of habeas corpus 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" Gilbert v. McCulloch, 776 F.3d 487, 491 (7th Cir. 2015) (quoting 28 U.S.C. §2254(a)). The petitioner must show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). "The Supreme Court has made clear that federal courts are not to find lightly that a state court's decision was 'contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" Gilbert, 776 F. 3d at 491 (quoting 28 U.S.C. §2254(d)(1)).

"Even if there is clearly established federal law . . . on point," this court may only grant relief "if the state court decision was 'contrary to, or an unreasonable application of,' that federal law." Id. at 492 (quoting 28 U.S.C. §2254(d)(1)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for

10

ordinary error correction through appeal." Harrington, 562 U.S. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979)). The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, id. at 103.

## VII. ANALYSIS

### A. Ineffective assistance

1. *The petitioner cannot show that his trial counsel's performance was deficient, that it fell below objective standards of reasonableness, or that it prejudiced his defense.*

The Sixth Amendment guarantees a criminal defendant's right "to have Assistance of Counsel for his defence." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness" of that counsel "must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). In the context of *habeas corpus*, the federal court must determine if the state court's determination "was unreasonable." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citation omitted). This "is a general standard" and "a state court has even more latitude to reasonably determine that a defendant has not satisfied the standard." Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

The petitioner must demonstrate (1) "that counsel's performance was deficient and fell below an objective standard of reasonableness" to such a

11

degree that it "'deprive[d] the defendant of a fair trial'" and (2) "that counsel's deficient performance prejudiced his defense." <u>Carter v. Butts</u>, 760 F.3d 631, 635 (7th Cir. 2014) (citing <u>Strickland</u>, 466 U.S. 668 (1984)). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> (internal quotation marks and citation omitted). The petitioner must show to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> (citation omitted). "A reasonable probability is one that . . . undermine[s] confidence in the outcome of the trial proceedings." <u>Id.</u> (citation omitted).

In the case at bar, the petitioner argues that because his trial counsel did not use Krzoska's recorded interview, the jurors could not properly evaluate the witness's credibility at trial. Dkt. 21 at 2-3. He asserts that this created "[a] reasonable probability of a differen[t] result." <u>Id.</u> at 3. <u>See also</u> Dkt. No. 1 at 14-15. He has asserted that the trial counsel failed to object to Krzoska's presence in the courtroom while other witnesses testified, <u>id.</u> at 18, but this claim is based on his argument that his trial counsel was ineffective when she did not use the tape-recorded interview to impeach Krzoska's trial testimony, <u>id.</u> at 19.

The Wisconsin Court of Appeals reviewed the petitioner's ineffective assistance arguments in detail. Dkt. No. 14-6 at 3-4. The court determined that the petitioner did "not establish deficient performance or prejudice from his counsel's performance." <u>Id.</u> at 3 (citation omitted). In terms of using the deputy's previous statements to impeach his testimony, the court of appeals found:

> The jury heard testimony from numerous witnesses and viewed videotape footage from the surveillance camera. In addition, counsel did specifically introduce the officers' numerous statements and pointed out some inconsistencies. Pointing out additional minor inconsistencies would not have benefited the defense.

Id. at 4 (citing State v. DeLeon, 127 Wis. 2d 74, 85 (Ct. App. 1985)).

The petitioner's federal briefs have not demonstrated that this ruling "was so lacking in justification that there was an error well understood . . . in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. He asserts over and over that Krzoska's trial testimony contained numerous inconsistencies, but points to only a few specific examples. He argues, for example, that in the tape-recorded interview, Krzoska indicated that the petitioner was not trying to run Krzoska over, while at trial, Krzoska testified that he feared he was going to be run over by the petitioner. Dkt. No. 1 at 17. This is not an inconsistency; the fact that Krzoska might have stated that he didn't think the petitioner was *trying* to run him over does not mean that Krzoska didn't still have a legitimate fear that the petitioner *would* run him over. He argues that, while Krzoska testified that he was in front of the vehicle when he fired at the petitioner, the expert witnesses testified that Krzoska was at the right of the vehicle. Id. at 20. But the petitioner didn't need the recorded interview to note this inconsistency—the jury would have heard it.

The petitioner goes into more detail about alleged inconsistencies in his February 17, 2015 status report (which was supposed to be a report on how his state post-conviction motion was progressing). Dkt. No. 21. But it is difficult for the court to ascertain how many of the statements the petitioner

13

points to are "inconsistent," or why the jury would have found differently had it had these "inconsistencies" pointed out. For example, the petitioner argues that in the recorded interview, Krzoska testified that he didn't see "him" (perhaps the petitioner) remove anything from "the cart," while at trial, Krzoska testified that a car blocked his view of "the cart." Id. at 3-4. It is not clear how these statements are inconsistent—if Krzoska couldn't see the car, then he couldn't see anyone take anything out of the cart—and the petitioner does not explain how any testimony about a cart relates to the outcome of his trial. Several of the "inconsistencies" he alleges he could have proven are inconsistencies between Krzoska's trial testimony and statements the petitioner alleges other officers made in sworn affidavits. Id. at 4. Again, the recorded interview would not demonstrate those inconsistencies.

The petitioner has failed to demonstrate that his trial counsel was ineffective in not using the recorded interview, and he certainly has not demonstrated that had she used the interview, there is a reasonable probability that the outcome of the case would have been different. The court finds the petitioner's Sixth Amendment ineffective assistance of counsel claim to be without merit.

>   2.   *The petitioner represented himself on appeal, making his*
>        *ineffective assistance of appellate counsel claim meritless and*
>        *frivolous.*

On December 17, 2009, the District III Court of Appeals ordered the

State Public Defender to appoint counsel to represent the petitioner on his

direct appeal. State v. David J. Marshall, Appeal No. 2010AP001688, available

at http://wscca.wicourts.gov. On June 28, 2010, Attorney Andrew Morgan filed

a "no-merit notice of appeal" in the circuit court. State of Wisconsin v. David J.

Marshall, Case No. 2007CF000609, available at https://wcca.wicourts.gov. On

July 14, 2010, Attorney Morgan filed a motion to withdraw as counsel. State v.

David J. Marshall, Appeal No. 2010AP001688. The court granted that motion

on August 12, 2010. Id. From that point on, it appears that the petitioner

represented himself.

The Wisconsin Court of Appeals provided additional facts in its October

15, 2014 decision. Dkt. No. 25-6. The court stated, "After Marshall's

sentencing, a newly-appointed attorney filed a no-merit notice of appeal. Rather

than proceed with the no-merit appeal, Marshall agreed that his attorney

should withdraw so Marshall could pursue a pro se postconviction motion." Id.

at 2-3.

"To succeed on an ineffective assistance of appellate counsel claim,

petitioner must show that 'appellate counsel failed to raise an issue that was

both obvious and clearly stronger than the issues he did raise.'" Smith v.

McKee, 598 F.3d 374 (7th Cir. 2010) (quoting Smith v. Gaetz, 565 F.3d 346,

352 (7th Cir. 2009)). In ground one of the petition, the petitioner asserts,

"Appellate Counsel . . . was ineffective [for] his failure to raise ineffective assistance of counsel [of trial counsel] for her failure to introduce the tape recorded interview of [Deputy Krzoska] to impeach his testimony at trial." Dkt. No. 1 at 6. In the context of the facts recounted above, it appears that the petitioner is arguing that he believes there was an appellate issue of merit—the issue of trial counsel failing to use the recorded interview to impeach Krzoska—and that his appellate attorney was ineffective in filing a no-merit notice of appeal, rather than filing an appeal on this issue.

This court found above that the petitioner has failed to demonstrate that his trial counsel was ineffective in failing to use the recorded interview for impeachment. That finding necessarily requires the court to find that appellate counsel Morgan was not ineffective for failing to raise the issue. The United States Supreme Court long ago held that no constitutional provision suggests that "the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Indeed, the court pointed out that "the role of the advocate 'requires that he support his client's appeal to the best of his ability,'" by exercising "reasonable professional judgments." Id. at 753-54. The petitioner's appellate counsel made a judgment that the petitioner's claim of ineffective assistance of trial counsel was not viable, and the petitioner has not demonstrated that his "appellate counsel failed to raise an issue that was both

obvious and clearly stronger than the issues he did raise." <u>Smith</u>, 598 F.3d at 386 (internal quotation marks and citation omitted).

In his February 2015 status report, the petitioner stated that he has "a right to effective assistance of counsel of his first appeal, but the petitioner is being denied his 6th Amendment right to appellate counsel." Dkt. No. 21 at 5-6. He argued that he did not "knowingly [or] intentionally omit the claim from [his] prior postconviction motion." <u>Id.</u> at 6 (quotation marks omitted). He also argued that he did not "have the skills of a[] professional attorney or have the ability to do research and raise the right issue on direct appeal." <u>Id.</u> (citations omitted). It is not clear to the court whether, by these statements, he is attempting to support an ineffective assistance claim, or somehow argue that the fact that he ended up representing himself constituted ineffective assistance. If so, such an argument is both meritless and frivolous. The petitioner *did* have appellate counsel in his direct appeal. That counsel *did* file a no-merit notice of appeal, and the petitioner could have had counsel proceed with a no-merit brief. The court did not refuse to give the petitioner his constitutionally-mandated lawyer; rather, the petitioner disagreed with that lawyer, and chose to go it on his own. In making that choice, he chose to proceed without the assistance of a "professional attorney" who would have had "the ability to do research and raise the right issue on direct appeal."[2]

---

[2] With regard to any argument the petitioner seeks to make regarding errors in his post-conviction motions, the court notes that the Supreme Court and lower courts have repeatedly held that "there is no constitutional right to an attorney in state postconviction proceedings." <u>Coleman v. Thompson</u>, 501 U.S. 722, 725 (1991) (internal citations omitted).

17

The court finds the petitioner's Sixth Amendment claim against his appellate counsel to be without merit.

B.    Prosecutorial Misconduct

1.    *The petitioner cannot demonstrate that the prosecutor intentionally infected his trial with unfairness or that the prosecutor intentionally prejudiced his defense.*

The second issue the petitioner raised in his petition and status report is his argument that the state prosecutor's failure to correct witnesses' false and contradictory testimony was misconduct that violated due process. "A prosecutor's misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Wilmington v. Sternes, 108 F. App'x 405, 408 (7th Cir. 2004) (quoting Darden v. Wainright, 477 U.S. 168, 181 (1986)). "Inflammatory, prejudicial statements . . . elicited by . . . a state prosecutor, evidencing a desire to improperly prejudice the defendant, may be serious enough to warrant federal habeas corpus relief." Rose v. Duckworth, 769 F.2d 402, 405 (7th Cir. 1985) (citation omitted). "In order to rise to the level of constitutional error, prosecutorial misconduct that does not implicate a specific provision of the Bill of Rights must have been so egregious that it deprived the defendant of a fair trial, thus making the resulting conviction a denial of due process." Id. (internal quotation marks and citation omitted). In order to evaluate the extent and "effect of prosecutorial misconduct, the reviewing court must consider the erroneous acts in the context of the entire trial, and each case must be determined on its own facts." Id. (citation omitted).

18

The Seventh Circuit has provided four factors for courts to consider when faced with "situations where . . . prosecutorial behavior raises questions about the overall fairness of the proceeding." Id. Those are:

> 1. Were the . . . actions of the prosecutor intended to reflect unfairly on the defendant's guilt or innocence or were they so prejudicial or inflammatory that they would 'naturally and necessarily' imply that the defendant was guilty of the crime charged;
>
> 2. Were the . . . actions isolated or extensive;
>
> 3. Was the evidence of guilt otherwise overwhelming; and
>
> 4. What curative instructions were given, and when?

Id. (quoting Hearn v. Mintzes, 708 F.2d 1072, 1077 (6th Cir. 1983)). The intent of the prosecutor is a "critical" element "in determining the appropriateness of habeas corpus relief." Id. The district court does "not have broad supervisory powers over state courts or their officers," but "intentional injection of unfairness by a prosecutor indicates that individual's state of mind and degree of concern for the rights of the defendant and . . . reflects on the likelihood that other instances of unfairness . . . occurred." Id. (citations omitted).

To determine the prosecutor's intent, the reviewing federal court must make "inferences from objective facts and circumstances," but the reviewing court must give the state court's "[f]indings of fact . . . a presumption of correctness." Id. (citing Oregon v. Kennedy, 456 U.S. 667, 675 (1982); Sumner v. Mata, 449 U.S. 539, 543-47 (1981); 28 U.S.C. §2254(d)). If the reviewing court finds that the prosecutor's actions were "serious," the court then must "assess the effect that that misconduct reasonably had on the jury's verdict in

order to determine if the petition for habeas corpus should be granted." Id. at 407.

On January 31, 2012, the Wisconsin Court of Appeals held that the petitioner's "claim that officers committed perjury based on minor inconsistencies in their testimony is frivolous." Dkt. No. 14-6 at 3. According to the court, "[T]he trial court correctly rejected Marshall's claim that the State engaged in prosecutorial misconduct," because the "allegedly inconsistent testimony did not qualify as perjury." Id. at 4. "The inconsistencies . . . [did] not show that the officers did not believe in the truth of their testimony." Id.

As an initial matter, this court cannot find, based on its review of the petitioner's various pleadings in this federal case, that the prosecutor at his trial failed to correct false testimony. As the court found above, the "inconsistencies" the petitioner specifically identifies in his pleadings are minor—to the point where several of them do not appear to be "inconsistencies." The court would hazard a guess that in the majority of trials that take place in state and federal courts across the country each day, there is some witness testimony that is "inconsistent." People word things differently from one day to the next. Long stretches of time pass between the time a witness gives one statement and the time he or she testifies at trial. Lawyers ask questions differently at different hearings or interviews. Memories fade. The mere existence of "inconsistencies" does not mean that the witness is lying, or presenting false testimony. It is the job of defense counsel to seize upon and point up material, serious inconsistencies, and the job of the prosecutor to

point out when any inconsistencies are minor, immaterial or accidental. That is how the adversarial system functions.

Even if the prosecutor noticed some inconsistencies in the testimony of the State's witnesses, the petitioner has provided no proof that the prosecutor knew, or had reason to believe, that the witnesses were lying, or presenting false testimony. While the petitioner points to the prosecutor's failure to "correct" the witnesses' allegedly false statements, he has not presented any evidence that the statements were purposefully "elicited by" the prosecutor, that the statements were "inflammatory," or that the prosecutor acted with "a desire to improperly prejudice the defendant." Rose, 769 F.2d at 405. The circuit court and the court of appeals determined that the witnesses' statements were not "so egregious" that they "deprived" the petitioner "of a fair trial," id., and the petitioner has provided no evidence to contradict that finding. The petitioner has not demonstrated that the prosecutor "intended to reflect unfairly on the defendant's guilt . . . " or that the statements "naturally . . . impl[ied] that the defendant was guilty." Id. (internal quotation marks and citations omitted). Nor has he provided any evidence that the prosecutor "intentional[ly] inject[ed] . . . unfairness" into the trial. Id. (citations omitted). The petitioner has not demonstrated prosecutorial misconduct, and thus the court finds that his Fourteenth Amendment due process claim is without merit.

## VIII.  CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing §2254 Cases provides that a district court must issue or deny a certificate of appealability when it enters "a final

order adverse to the applicant." A certificate of appealability "may be issued only if the prisoner has at least one substantial constitutional question for appeal." 28 U.S.C. §2253(c)(2). Because the petitioner has not made a substantial showing of the denial of a constitutional right, the court will not issue a certificate of appealability.

**CONCLUSION**

The court **DENIES** the petitioner's January 30, 2013 *habeas corpus* petition, and **ORDERS** that the petition is **DISMISSED**, effective immediately. The court further **ORDERS** that it will not issue a certificate of appealability.

Dated in Milwaukee, Wisconsin this 4th day of January, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge